1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2

3

4     United States of America,      )
                     Plaintiff,      )
5                                    )
                                     )
6     vs.                            )    Case No. 21-cr-40023-TSH
                                     )
7                                    )
                                     )
      Richard Oworae,                )
8                    Defendant.      )

9

10    BEFORE:  The Honorable Timothy S. Hillman

11

12                        Remote Rule 11

13

14

15                              United States District Court
                                Courtroom No. 2
16                              595 Main Street
                                Worcester, Massachusetts
17                              September 15, 2021

18

19

20

21

22

                          Marianne Kusa-Ryll, RDR, CRR
23                          Official Court Reporter
                          United States District Court
24                         595 Main Street, Room 514A
                            Worcester, MA 01608-2093
25                      508-929-3399 justicehill@aol.com
                     Mechanical Steno - Transcript by Computer

1    APPEARANCES:

2    United States Attorney's Office
     Danial Bennett, Assistant United States Attorney
3    595 Main Street
     Worcester, Massachusetts 01608
4    on behalf of the Government

5    O'Connor & Ryan
     Edward P. Ryan, Jr., Esquire
6    80 Erdman Way
     Suite 309
7    Leominster, Massachusetts  01453
     on behalf of the Defendant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2          (The following proceedings were held remotely before

3     the Honorable Timothy S. Hillman, United States District Judge,

4     United States District Court, District of Massachusetts, on

5     September 15, 2021.)

6          THE CLERK:  Case No. 21-40023, United States versus

7     Richard Oworae.

8          Counsel, please note your appearance for the record.

9          MR. BENNETT:  Good morning, your Honor.  Dan Bennett

10    on behalf of the United States.

11         THE DEFENDANT:  Good morning.  Richard Oworae.

12         MR. RYAN:  Okay.  Good morning, your Honor.  Edward P.

13    Ryan, Jr., representing Richard Oworae, who just introduced

14    himself.

15         THE COURT:  Good morning, Attorney Ryan.

16         Good morning, Attorney Bennett.

17         Mr. Oworae, can you see and hear me okay?

18         THE DEFENDANT:  Yes.

19         THE COURT:  All right.

20         THE DEFENDANT:  I hear you.

21         THE COURT:  You can hear me?

22         THE DEFENDANT:  Yes, I can hear you.

23         THE COURT:  Can you see me?

24         THE DEFENDANT:  I can see you.

25         THE COURT:  All right.  Great.

1          Mr. Castles, let's swear in Mr. Oworae, please.

2          THE CLERK:  Please raise your right hand.

3          Do you solemnly swear the statements you are about to

4    give in the case now before the Court will be the truth, the

5    whole truth, and nothing but the truth, so help you God?

6          THE DEFENDANT:  I do.

7          THE COURT:  All right.  Mr. Oworae, as you know, my

8    name is Judge Hillman.  I'm going to be asking you some

9    questions this morning about the guilty plea that I'm told

10   you're prepared to make; but before I do that, I need to

11   explain to you that you have a right to be physically present

12   in an open courtroom with members of your family and your

13   friends and any members of the public who wish to attend, able

14   to come to court; but instead, you are asking me to give up

15   that right and instead appear by video conference.  So I need

16   to ask you some questions about that.

17         So the first question I have is:  Do you understand

18   that you have a right to be physically present in open court

19   for this change of plea hearing?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  And do you understand that if at any point

22   this morning if you want to talk with Attorney Ryan, all you

23   have to do is just say the word, and we will put you and he

24   into what's called a breakout room where you two will be able

25   to see each other and speak with each other, but no one else

1    will be able to see or hear you?

2            Do you understand that?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  All right.  And have you and Attorney Ryan

5    spoken about you giving up your right to appear in person in an

6    open courtroom for your change of plea?

7            THE DEFENDANT:  Yes, your Honor.

8            THE COURT:  And do you agree to waive, or give up your

9    right to appear in person, for this change of plea hearing?

10           THE DEFENDANT:  Yes, your Honor.

11           THE COURT:  All right.  Attorney Ryan, any reason you

12   can think of why I should not accept Mr. Oworae's waiver?

13           MR. RYAN:  No, none -- none, your Honor.

14           THE COURT:  All right.  Thank you.

15           I find that Mr. Oworae has knowingly and voluntarily

16   waived his right to appear in person and has instead elected to

17   appear by video conference.

18           I find that he has waived his right to have members of

19   the public attend in person, and to the extent possible appear

20   by video or teleconference.

21           All right.  Mr. Ryan, for the record, why are we here?

22           MR. RYAN:  This is a change of plea, a Rule 11, your

23   Honor.

24           THE COURT:  Thank you.

25           So, Mr. Oworae, Attorney Ryan tells me that you are

1   prepared to plead guilty to these -- to these pending charges.

2          Do you understand that you are now under oath and that

3   if you answer any of my questions falsely you may later be

4   subjected to another prosecution for perjury or making a false

5   statement?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  All right.  Tell me your name and how old

8   you are.

9          THE DEFENDANT:  I'm Richard Oworae.  I'm 60 years old.

10          THE COURT:  And, Mr. Oworae, how far did you go in

11   school?

12          THE DEFENDANT:  I graduated with a bachelor of arts

13   degree in sociology and political science from the University

14   of Ghana, and I also have a master's of science in nonprofit

15   management from Worcester State University in Massachusetts;

16   and I also have a master's of business administration, that is

17   an MBA from Champlain College, Burlington, Vermont; and I was a

18   candidate for a doctorate of business administration from

19   Wharton University, but I deferred that because -- because of

20   the case.

21          THE COURT:  Thank you.  And are you a citizen of the

22   United States?

23          THE DEFENDANT:  I'm a naturalized citizen of the

24   United States.

25          THE COURT:  Okay.  Are you presently being treated, or

1   have you recently been treated for any mental illness or

2   psychiatric or psychological problem of any kind?

3           THE DEFENDANT:  No.

4           THE COURT:  Are you presently being treated, or have

5   you recently been treated, for any drug addiction or drug

6   problem or alcohol problem of any kind?

7           THE DEFENDANT:  No, your Honor.

8           THE COURT:  As you sit here today, are you under the

9   influence of any medication or drug or alcoholic beverage?

10          THE DEFENDANT:  No, your Honor.

11          THE COURT:  Have you received a copy of the

12  information, that is, the written charges against you?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  And you understand that that information

15  charges you with four crimes: the -- you're charged with three

16  counts of wire fraud, and that's alleged to violate 18 United

17  States Code Section 1343; and you're charged with one count of

18  aggravated identity theft, and that's alleged to violate

19  18 United States Code Section 1028A.

20          Are you aware that those are the pending charges

21  against you?

22          THE DEFENDANT:  Yes, your Honor.

23          THE COURT:  And have you had a chance to fully discuss

24  the facts and circumstances of your case with Attorney Ryan?

25          THE DEFENDANT:  Yes, your Honor.

1      THE COURT:  And have you and Attorney Ryan discussed

2  the case rights that you have and the consequences to you of

3  pleading guilty?

4      THE DEFENDANT:  Yes, your Honor.

5      THE COURT:  And have you and Attorney Ryan discussed

6  the trial options that the facts of this case represent?

7      THE DEFENDANT:  Yes, your Honor.

8      THE COURT:  Are you fully satisfied with the advice

9  and the representation that has been given to you in this case

10  by Attorney Ryan?

11      THE DEFENDANT:  Yes, your Honor.

12      THE COURT:  And do you have any complaints about the

13  manner of his representation?

14      THE DEFENDANT:  No, your Honor.

15      THE COURT:  Okay.  So I have been given a document

16  that bears your signature giving up your right to have your

17  case presented to a grand jury.

18      Did you sign that waiver?

19      THE DEFENDANT:  Yes, your Honor.

20      THE COURT:  And did you have a chance to go over that

21  waiver with Attorney Ryan before you signed it?

22      THE DEFENDANT:  Yes, your Honor.

23      THE COURT:  So you should understand that you have a

24  constitutional right to have your case presented to a grand

25  jury to determine whether or not you would be indicted, and

1   that means that the grand jury might indict you, or they might

2   not; but when you give up your right to go to the grand jury,

3   this case will proceed against you on this information that I

4   just talked to you about just as though you had been indicted.

5           Do you understand that?

6           THE DEFENDANT:  Yes, your Honor.

7           THE COURT:  Are you willing to give up your right to

8   indictment by a grand jury and instead proceed by an

9   information?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  All right.  Thank you.

12          Now, Attorney Bennett, there is no plea agreement in

13  this?

14          MR. BENNETT:  That is correct, your Honor.

15          THE COURT:  So it's just a straight-up plea to the

16  information?

17          MR. BENNETT:  That's correct, your Honor.

18          THE COURT:  Thank you.

19          So has -- Mr. Oworae, has anybody threatened you or

20  promised you anything to get you to plead guilty in this case?

21          THE DEFENDANT:  No, your Honor.

22          THE COURT:  You're pleading guilty of your own free

23  will because you are guilty and for no other reason?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  And you understand that the crimes that

1   you are pleading guilty to are felonies, which means that by

2   being judged guilty of a felony, you may lose valuable civil

3   rights, which includes the right to vote, the right to hold

4   public office, the right to serve on a jury, and the right to

5   possess a gun or any kind of firearm?

6           Do you understand that?

7           THE DEFENDANT:  Yes, your Honor.

8           THE COURT:  And, Attorney Bennett, can you tell myself

9   and the defendant the maximum punishment that the law provides

10  in this case?

11          MR. BENNETT:  Yes, your Honor.

12          For Counts One through Three, the wire fraud charges,

13  the maximum term of incarceration is 20 years; the maximum fine

14  is a million dollars, or twice the gross gain or loss,

15  whichever is greater; the supervised release term is a maximum

16  of three years.

17          Your Honor, for Count Four, the aggravated identity

18  theft charge, there is a mandatory minimum two years that must

19  be served consecutive to any term imposed by the Court for

20  Counts One through Three.  There's a maximum fine of $250,000,

21  one year of supervised release.  Each count carries -- of the

22  four counts carries a $100 mandatory assessment for a total of

23  $400.  The government will seek both forfeiture and restitution

24  amounts, and as the -- I believe was covered earlier,

25  Mr. Oworae is a citizen of the United States so there is no

1    consequences that are applicable to this case.

2            THE COURT:  And what -- what is the loss -- the loss

3    amount?

4            MR. BENNETT:  Your Honor, that's a little bit tricky.

5    The total amount is -- that Mr. Oworae sought to get from

6    the -- from this program was approximately $195,000.  He wasn't

7    successful in getting all of that amount.  In fact, we believe

8    that the amount that he had in hand is approximately $37,000.

9    That's complicated also by an amount that was wired to TD Bank,

10   and that has -- is the subject of an administrative forfeiture

11   action.  That amount was successfully frozen.  All to say,

12   we'll have a more refined number once those processes play out.

13   At sentencing we'll seek an amount for restitution and

14   forfeiture, but it's a little bit complicated right now.

15           THE COURT:  All right.  Thank you.

16           So, Mr. Oworae, I'm not saying this is what's going to

17   happen, but you should understand that I will have the power to

18   give you a term of imprisonment on the first three counts of up

19   to 60 years, that's 20 years on each count.

20           Do you understand that?

21           THE DEFENDANT:  Yes, your Honor.

22           THE COURT:  And that I will have the power to give you

23   a fine of up to $3 million, that's $1 million on each count;

24   and I will have the power to give you a term of supervised

25   release of up to three years on each count for a total of nine

1    years.

2              THE DEFENDANT:  Yes, your Honor.

3              THE COURT:  And with respect to the Count Four, the

4    aggravated identity theft count, I am going to be required to

5    give you a term of imprisonment of two years on and after any

6    sentence that you may get on Counts One through Three.

7              Do you understand that?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  And in addition that you will face a fine

10   of up to $250,000 on that count and a one-year term of

11   supervised release.

12             Do you understand that?

13             THE DEFENDANT:  Yes, your Honor.

14             THE COURT:  So do you think you understand all of the

15   consequences to you of pleading guilty, the possible term of

16   imprisonment, the possible fine, the possible supervised

17   release term, and the loss of your civil rights?

18             Do you understand that?

19             THE DEFENDANT:  Yes, your Honor.

20             THE COURT:  And you understand that in addition to

21   everything else, there's going to be a $100 special assessment

22   on each count for a total of $400.  There will be either

23   restitution or forfeiture based upon a hearing that we may have

24   in order to determine those amounts.

25             Do you understand that?

1           THE DEFENDANT:  Yes, your Honor.

2           THE COURT:  So do you think you understand all of the

3    possible consequences to you of pleading guilty?

4           THE DEFENDANT:  Yes, your Honor.

5           THE COURT:  All right.  Now, I know that you and

6    Attorney Ryan have spoken about the sentencing guidelines, and

7    I, too, have an obligation to speak with you about them.

8           So these sentencing guidelines have been issued by the

9    sentencing -- United States Sentencing Commission for judges

10   like myself to follow when attempting to determine what the

11   appropriate sentence is in a criminal case.  They're not

12   mandatory, which means I don't have to follow them, but I do

13   have to consider them before I arrive at your sentence.

14          So let me ask you:  Have you and Attorney Ryan spoken

15   about the sentencing guidelines and how they might apply in

16   your case?

17          THE DEFENDANT:  Yes, your Honor.

18          THE COURT:  So do you understand that I'm not going to

19   be able to determine your guideline sentence until after the

20   probation office prepares a report that will contain

21   information about you and your personal history and your

22   criminal history, if you happen to have one, and the crimes

23   that you are alleged to have committed?  And this report will

24   also contain a recommended application of the sentencing

25   guidelines.  And you're going to -- you and the government will

1    get this report before me, and that is so that you can make

2    sure that all of the facts in it are accurate.  You can

3    challenge any facts that you don't think are accurate, and you

4    can challenge the application of the sentencing guidelines.

5         So let me ask you:  Do you understand that although I

6    am not required to follow the sentencing guidelines, I do have

7    to consider them before I arrive at your sentence?

8              THE DEFENDANT:  Yes, your Honor.

9              THE COURT:  And do you understand that under the

10   guideline system, I may have the authority to depart from the

11   guidelines and impose a sentence that is more severe than what

12   the guidelines call for, or I may depart and impose a sentence

13   that is less severe than what they call for?

14             Do you understand I will have that ability?

15             THE DEFENDANT:  Yes, your Honor.

16             THE COURT:  And do you understand that you will not be

17   permitted to withdraw your guilty plea because your sentence is

18   longer than you expected, or because you're unhappy with your

19   sentence, or because it may be different than the sentence that

20   counsel is arguing for on your behalf?

21             Do you understand that?

22             THE DEFENDANT:  Yes, your Honor.

23             THE COURT:  Do you understand that both you and the

24   government under some circumstances may have the right to

25   appeal any sentence that I impose upon you?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right.  So let me go through one final

3     set of rights that you give up when you plead guilty, and we

4     will proceed to take your plea.

5          So you should understand that you have a right, as you

6     have done, to plead not guilty to these offenses and go to

7     trial.  And at that trial, you would have the right to have

8     your guilt or innocence decided by a jury of 12 members of the

9     community that you would get to help select.  And you would

10    have the right to the considerable assistance of Attorney Ryan

11    as counsel for your defense.  And you would have the right to

12    see and hear all of the witnesses against you and have

13    Attorney Ryan confront those witnesses on your behalf by

14    cross-examining them.

15         You would also have the right, if you chose to

16    exercise it, to require witnesses to come into court and to put

17    on evidence in your own defense and to testify in your own

18    defense.  However, you would also have the right to refuse to

19    testify and refuse to put on evidence, unless you voluntarily

20    elected to do so; and if you decided not to testify or put on

21    evidence, I would instruct the jury that they are not to think

22    anything bad about either you or your case because of these

23    rights that you possess.

24         Do you understand that?

25         THE DEFENDANT:  Yes, your Honor.

1          THE COURT:  So do you understand that by pleading

2      guilty today, if I accept your guilty plea, you will have given

3      up your rights to a trial as well as the rights that come with

4      a trial that I have just described?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  All right.  Thank you.

7          Mr. Bennett, let's start first with the elements of

8      the crimes the defendant is charged with the government would

9      need to prove.

10         MR. BENNETT:  Yes, your Honor.

11         For Counts One through Three, the wire fraud counts,

12     the government would be required to prove each of the elements

13     beyond a reasonable doubt.

14         First, that there was a scheme substantially as

15     charged in the information to defraud or obtain money or

16     property by means of false or fraudulent pretenses.

17         Second, that the scheme to defraud involved the

18     misrepresentation or concealment of material fact or matter or

19     the scheme to obtain money or property by means of false or

20     fraudulent pretenses, involved a false statement assertion,

21     half-truth, or knowing concealment concerning a material fact

22     or matter.

23         Third, that the defendant knowingly and willfully

24     participated in this scheme with intent to defraud.

25         And, fourth, that the purpose of executing this scheme

1    or in furtherance of the scheme, the defendant caused an

2    interstate or foreign wire communication to be used, or it was

3    reasonably foreseeable for the purpose of executing the scheme,

4    or in furtherance of the scheme, an interstate or foreign wire

5    communication would be used on or about the date alleged.

6              For Count Four, your Honor, the aggravated identity

7    theft count, the four elements are:

8              First, that the defendant committed the felony

9    violation alleged in Count Two.

10             Second, that during in and in relation to the felony

11   violation in Count Two that the defendant knowingly

12   transferred, possessed, used a means of identification

13   described in the information without lawful authority.

14             Third, that that means of identification actually

15   belonged to another person.

16             And, fourth and finally, the defendant knew that that

17   means of identification belonged to another person.

18             THE COURT:  Thank you, Mr. Bennett.

19             So, Mr. Oworae, you understand that if you had gone to

20   trial those are the elements of the crimes that you are charged

21   with; and in order for you to be convicted of any one of those

22   crimes, the government would need to prove each of the elements

23   of the crime beyond a reasonable doubt to the satisfaction of

24   each of the 12 jurors.

25             Do you understand that?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  All right.  Thank you.

3          Attorney Bennett, what are the facts upon which the

4    government would rely were this case to go to trial?

5          MR. BENNETT:  Yes, your Honor.  I'll read the factual

6    basis.  Just as a warning though, this is a little bit lengthy.

7    I'll do my best to get through it as quickly as possible, but

8    not reading too fast for the court reporter.

9          Your Honor, the factual basis --

10          THE COURT:  Take your time.  Take your time.

11          MR. BENNETT:  Thank you, Judge.

12          As a factual basis for this guilty plea, the

13    government respectfully submits the following:  In March of

14    2020, Congress enacted the Coronavirus Aid, Relief, and

15    Economic Security Act, or the CARES Act, a $2.2 trillion

16    economic stimulus bill.

17          The provision of -- the provisions of the CARES Act in

18    conjunction with an officially declared disaster by the United

19    States Government allowed for the Small Business

20    Administration, or the SBA, to provide federal funding and

21    other support to entrepreneurs and small businesses, including

22    the Economic Injury Disaster Loans, or EIDL, E-I-D-L, to

23    business owners negatively affected by the COVID-19 pandemic.

24          To apply for EIDL funding, meaning Economic Injury

25    Disaster Loans, so to apply for EIDL funding, an applicant used

1    an SBA online portal to submit personal and business

2    information in support of each EIDL application.

3          EIDL applicants generally did not have to submit

4    supporting documentation; however, the EIDL application

5    included a section in which the applicant was required to

6    affirm that the information submitted was true and correct

7    under the penalty of perjury and other applicable federal

8    criminal statutes.

9          To complete the EIDL application, the applicant

10   provided information regarding the affected business entity

11   including, but not limited to, the ownership of the business,

12   the number of employees, and the gross business revenues

13   realized in the 12 months prior to the COVID-19 impact on the

14   national economy.

15         Consistent with congressional intent to assist small

16   businesses during the pandemic, the provisions of the EIDL

17   program required that the loan proceeds could only be used on

18   certain permissible business expenses, which included payment

19   of fixed business debts, payroll, accounts payable, and other

20   business-related expenses that could have -- that could have

21   been paid had the COVID-19 disaster not occurred.

22         The SBA relied upon the information provided by the

23   applicant to calculate the principal amount of money the small

24   business was eligible to receive in the form of EIDL funding.

25         EIDL loan amounts approved by the SBA were calculated

1   based on the business gross revenues and costs of goods sold

2   for the 12 months prior to January 31, 2020.

3          The basic loan amount was intended to cover six months

4   of gross profit, meaning gross profit or -- excuse me --

5   meaning gross revenue minus cost of goods sold.

6          The maximum EIDL loan amount was $150,000 per entity.

7   The SBA Office of Disaster Assistance controlled the EIDL

8   program, and it's headquartered in Washington, DC.  The Office

9   of Disaster Assistance had authority over all loans created and

10  disbursed under the EIDL program.  The EIDL principal proceeds

11  and the previously described cash advance grants were solely

12  funded by the SBA and were disbursed from government-controlled

13  accounts maintained by the U.S. Treasury at Federal Reserve

14  banks throughout the United States.

15         Between July 31, 2020, and at least August 28, 2020,

16  Defendant Richard Oworae schemed to defraud the SBA by

17  submitting three fraudulent applications through the SBA's --

18  SBA's website for EIDL -- EIDLs totaling approximately

19  $194,700.

20         Mr. Oworae used his personal information and the

21  personal information of his spouse to fraudulently apply for

22  EIDL funding, provide false statements on the loan application,

23  cause interstate wire communications in furtherance of his

24  scheme to defraud the SBA, and to misappropriate loan funds for

25  his personal use and benefit.

1          Your Honor, I'm going to go through the three loans.

2     The first one, loan No. 1, is for the GIMP Management

3     Consultants loan.  GIMP spelled G-I-M-P.

4          On July 31, 2020, Mr. Oworae submitted his first

5     fraudulent application for EIDL funding in the amount of 27,800

6     for GIMP Management Consultants, GMC, through the SBA

7     application portal.

8          According to SBA records, the GMC application

9     identified Mr. Oworae as the owner of the business and included

10    Mr. Oworae's actual social security number and date of birth as

11    well as a telephone number and an email address.

12         Mr. Oworae identified the G -- identified GMC as a

13    proprietor -- a proprietorship with a gross revenue for the

14    previous 12-month period of $55,579.

15         Mr. Oworae is -- was the resident -- was the resident

16    agent for GIMP Management and Tax Consultant, LLC.  That's

17    GMTC.  That's different from GMC.  They're not the same thing.

18    GMTC is a limited liability company formed in Massachusetts on

19    or about August 26, 2020.

20         According to the relevant certificate of organization,

21    GMTC provides tax preparation, investment, cybersecurity, and

22    business management consulting services.  GMTC's business

23    address is 65 James Street, Suite 8A, here in Worcester,

24    Massachusetts.

25         GMC, on the other hand, is a fictitious business

1    entity utilizing a variation on the GMTC business name.  There

2    are no online records past or present relating to any business

3    operation as GMC, including official state and corporation

4    records, business websites, or other websites relating to GMC.

5           On August 1, 2020, Mr. Oworae electronically signed

6    the loan agreement and note identifying himself on the executed

7    loan agreement as the owner/officer of GMC.  As part of the

8    process of executing the signed loan agreement and note,

9    Mr. Oworae acknowledged the loan authorization and agreement

10   which states in pertinent part, quote, all representations in

11   the borrower's loan application, including all supplementary

12   submissions are true, correct and complete and are offered to

13   induce SBA to make this loan, end quote.

14          Following the disbursement of EIDL funds, Mr. Oworae

15   made numerous ATM cash withdrawals, purchases at various

16   merchants, credit card payments, and money transfers to

17   numerous individuals residing in Ghana using a money remitter

18   business based in Tanzania.  That's the first loan.

19          On to the second loan, which is the U.S. Postal

20   Services EIDL loan.  On August 4, 2020, Mr. Oworae submitted a

21   second fraudulent application for an EIDL loan in the amount of

22   $82,900 using the business name U.S. Postal Services P&DC

23   through the SBA application portal.  Mr. Oworae submitted the

24   U.S. Postal Services P&DC application posing as his wife using

25   her home address, actual social security number, and date of

1    birth, her contact telephone number and her email address.

2          Mr. Oworae used his personal -- his wife's personal

3    identifying information without lawful authority and without

4    her consent in furtherance of this fraudulent loan application.

5          Mr. Oworae identified the type of business as, quote,

6    independent with a gross revenue for the previous 12 months --

7    12-month period of $165,620.

8          The U.S. Postal Services P&DC application indicated

9    that the business was established on November 11, 2017.

10          Mr. Oworae entered his spouse's social security number

11    as a business EIN/social security number for the sole

12    proprietorship.

13          Like GMC, U.S. Postal Services P&DC is a fictitious

14    business entity.  There are no online records, past or present,

15    relating to any business operating as U.S. Postal Services

16    P&DC, including official state and corporation records,

17    business websites, or other websites belonging to U.S. Postal

18    Services P&DC.

19          On August 12, 2020, the SBA wired -- wire transferred

20    $82,900 to a bank account controlled by Mr. Oworae's wife to

21    which he had access.  From this account, Mr. Oworae made

22    numerous ATM cash withdrawals, electronic payments to various

23    bank and department store credit cards, grocery store and

24    gasoline purchases, and other personal expenditures.

25          The next section is the third and final loan.  This is

1    the GMTC EIDL loan.

2            On August 10, 2020, Mr. Oworae submitted a third

3    fraudulent application for an EIDL loan in the amount of

4    $84,000 in the name of GMTC through the SBA application portal.

5    Mr. Oworae submitted the GMTC application as the individual

6    owner of the business using his actual address, social security

7    number, and date of birth, as well as a telephone number and

8    email -- his telephone number and email address.  Mr. Oworae

9    identified GMTC as a general partnership with a gross revenue

10   for the previous 12-month period of $168,000.

11           The GMTC application indicated that the business was

12   established on June 5, 2011.

13           On August 26, 2020, 16 days after the GMTC EIDL loan

14   application was submitted, Mr. Oworae first incorporated GMTC.

15           On August 28, 2020, Mr. Oworae E signed the loan

16   agreement and note electronically identifying himself on the

17   executed agreement as the owner/officer of GMTC.  As he did

18   while signing for the GMC and the U.S. Postal Services P&DC

19   loans, Mr. Oworae acknowledged and certified that all of the

20   information contained on the GMTC loan application was true and

21   correct.

22           On August 28, 2020, the SBA attempted to wire transfer

23   $84,000 unsuccessfully because the bank account Mr. Oworae

24   provided was closed.

25           On August 29, 2020, Mr. Oworae provided a new bank

1    account for the GMTC loan proceeds to be wired, though SBA

2    never disbursed any loan funds to GMTC.

3              That's all, your Honor.

4              THE COURT:  Thank you, Mr. Bennett.

5              Mr. Oworae, did you do the things that the United

6    States Attorney said that you did?

7              THE DEFENDANT:  Yes, your Honor.

8              THE COURT:  Do you admit that everything that Attorney

9    Bennett just told me is true?

10             THE DEFENDANT:  Yes, your Honor.

11             THE COURT:  Do you want to add any facts or subtract

12   any facts or change any of the facts that I've just heard?

13             THE DEFENDANT:  Yes.  On the company registration that

14   we -- it was G -- GIMP Management and Task Consultancy was a

15   general partnership before it transitioned to company

16   limited -- a limited liability company.  So it was in existence

17   before the incorporation.

18             Actually, the business started in 2012.  So that was

19   what I -- I just wanted to add.

20             THE COURT:  Thank you.

21             All right.  Are you pleading guilty because you are

22   guilty and for no other reason?

23             THE DEFENDANT:  Come again?

24             THE COURT:  Are you pleading guilty because you are

25   guilty and for no other reason?

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Attorney Ryan, is there any reason I

3    should not accept this guilty plea or take this guilty plea?

4          MR. RYAN:  (Inaudible.)

5          THE COURT:  You're muted.

6          MR. RYAN:  Yes, I'm sorry.

7          No, your Honor.

8          THE COURT:  Thank you.

9          Mr. Castles, you may inquire.

10          THE CLERK:  Richard Oworae, on Criminal Action

11    No. 21-40023, you are charged in Counts One, Two, and Three of

12    a four-count information with wire fraud in violation of

13    Title 18 United States Code Section 1343.

14          What say you as to Counts One, Two, and Three, guilty

15    or not guilty?

16          THE DEFENDANT:  Guilty.

17          THE CLERK:  And you are charged in Count Four with

18    aggravated identity theft in violation of Title 18 United

19    States Code Section 1028A.

20          What say you as to Count Four, guilty or not guilty?

21          THE DEFENDANT:  Guilty.

22          THE COURT:  All right.  Thank you.

23          I find that the defendant is competent and capable of

24    entering into an informed plea.  I find that he is aware of the

25    charges against him and the consequences to him of pleading

1    guilty.

2            I find that his guilty plea is freely and voluntarily

3    made and supported by an independent basis in fact containing

4    each of the essential elements of the crimes charged.

5            I, therefore, accept his plea and he is judged guilty

6    of those offenses.

7            How is January 12th at 3:30 for sentencing?

8            Attorney Bennett, does that work?

9            MR. BENNETT:  Good for the government, your Honor.

10           THE COURT:  And, Attorney Ryan, does that work for the

11   defendant?

12           MR. RYAN:  Yes.  What time was that, your Honor?

13           THE COURT:  3:30.

14           MR. RYAN:  That works.

15           THE COURT:  All right.  Thank you.

16           So, Mr. Oworae, we're going to see you back here in

17   January.  I just want to remind you that -- and I know we've

18   thrown a lot of stuff at you today, but one of the things I

19   want to reinforce is you're going to get this presentence

20   report before me.  So spend some time with it, and even minor

21   facts should be corrected, because it affects a lot of things.

22           And we'll see you back here for sentencing in January;

23   and Attorney Ryan will speak with you about this, but you will

24   be given a chance to speak before I -- on your own behalf

25   before I impose sentence upon you.

1          All right, everybody, nice job.

2          Yes, Mr. Bennett.

3          MR. BENNETT:  Your Honor, I'm sorry to -- I have two

4   housekeeping things, if I could put on the record.

5          First --

6          THE COURT:  Sure.

7          MR. BENNETT:  -- we would ask that the time be

8   excluded.  There is a prior order from the Court excluding the

9   time through August 12th.

10          I'd ask for that time -- the time from August 12th to

11   today be excluded as well.

12          THE COURT:  Any objection to that, Mr. Ryan?

13          MR. RYAN:  No, your Honor.

14          THE COURT:  All right.  That is so ordered.

15          MR. BENNETT:  The second thing, your Honor, just so

16   the record is complete and the Court is aware.  The Court may

17   know this already.  When we initially complainted this case,

18   Mr. Oworae was charged along with his wife.  We have since

19   dismissed the charge against Mrs. Oworae.  I just wanted to

20   make sure that was clear that that had happened and the Court

21   was aware that we had initially charged them.  We determined

22   that that was in the best interest and submitted a request to

23   the Court that that be dismissed.

24          THE COURT:  Thank you for sharing that.

25          MR. BENNETT:  Thank you, Judge.

1          THE COURT:  All right, everybody, thank you.  We're in

2     recess.

3          MR. RYAN:  Thank you, your Honor.

4          (At 10:39 a.m., court was adjourned.)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                         C E R T I F I C A T E

2

3            I, Marianne Kusa-Ryll, RDR, CRR, do hereby

4    certify that the foregoing transcript is a true and accurate

5    transcription of my stenographic notes before the Honorable

6    Timothy S. Hillman, to the best of my skill, knowledge, and

7    ability.

8

9

10       /s/ Marianne Kusa-Ryll                      11/26/21

11       Marianne Kusa-Ryll, RDR, CRR                Date

12       Official Court Reporter

13

14

15

16

17

18

19

20

21

22

23

24

25